THIGPEN, Judge.
After a jury returned a verdict in favor of 3M Farms and Martin Muller, John Edgar Hudson and his wife, Carolyn Louise Hudson, appeal the denial of a motion for a new trial.
In November 1993, the Hudsons sued Elizabeth Moore, 3M Farms, Muller, and others, alleging, among other things, that Moore had injured John Hudson while operating her vehicle, and that 3M Farms and Muller were liable under the doctrine of respondeat superior. Additionally, Carolyn Hudson claimed loss of consortium.
Moore was employed as a caretaker for 3M Farms, which was owned by Muller. The farm provided a boarding service for approximately 40 horses, and Moore’s duties required her to live on the premises in order to properly provide daily care and security for the horses that were boarded at the farm. Moore was provided free board for her own horses. The Hudsons boarded their horse there. In May 1993, Mr. Hudson was injured near one of the horse barns when Moore backed her personal vehicle into him and pinned him between her vehicle and his truck.
In May 1994, the Hudsons’ claims against Moore were dismissed. The trial court entered a summary judgment for 3M Farms and Muller, but that summary judgment was reversed for a factual determination of whether Moore was acting within the line and scope of her employment when Hudson was injured. Hudson v. Muller, 653 So.2d 942 (Ala.1995).. The trial court entered a judgment consistent with the jury verdict in favor of 3M Farms and Muller. After the Hudsons’ post-judgment motions were denied, they appealed.
The dispositive issue involves whether the trial court erred in denying their motion for a new trial.
Initially, we note the presumption afforded a jury verdict. In Avon-Avalon, Inc. v. Collins, 643 So.2d 570, 571 (Ala.1994), our Supreme Court stated:
“ ‘Upon review of a jury verdict, we presume that the verdict was correct, and this presumption is strengthened by the trial court’s denial of a motion for a new trial.’ Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160, 162 (Ala.1988). We will not overturn a judgment based on a jury verdict unless the evidence against the verdict is so much more credible and convincing to the mind than the evidence supporting the verdict that it clearly indicates that the jury’s verdict was wrong and unjust. Alpine Bay Resorts.”
The Hudsons argued in their post-judgment motion that, on voir dire, one of the jurors, L.B., misrepresented her views regarding large damages awards. To sup *149 port their contentions, the Hudsons presented affidavits of three other jurors, who all stated that during deliberations, L.B. made statements to the effect that she did not believe in people suing others for money-damages in negligence cases. A review of the transcript reveals that L.B.’s responses during voir dire were as follows:
“MR. GALVIN: One of the things we’re going to be talking about in this ease — this is a serious injury case, and it involves a horse farm. Some of you might have gotten the idea when we started talking about horses. One of the things that I’m going to be asking each one of you, in this case we’re going to be talking about hundreds of thousands of dollars for a very serious injury.
“Is there anybody here — does anybody here feel frightened or intimidated or uncomfortable with talking about large sums of money like that? We’re talking about somebody — the rest of their life. We’re talking about a very traumatic injury. Is there anybody here who feels uncomfortable with the idea of talking about hundreds of thousands of dollars, particularly if it’s supported by the law and the evidence, making that kind of award, if the evidence shows that that kind of award is what should be done? Is there anybody that just has a difficult time with that?
[[Image here]]
“MR. GALVIN: And, [L.B.], how about you?
“PROSPECTIVE JUROR [L.B.]: No, it doesn’t.
“MR. GALVIN: It doesn’t unnerve you or make you feel uncomfortable to consider those things?
“PROSPECTIVE JUROR [L.B.]: Not at all.”
When a motion for a new trial is grounded on allegedly improper responses or lack of responses by prospective jurors on voir dire, the trial court should determine whether this has resulted in probable prejudice to the movant. Alabama Gas Corp. v. American Furniture Galleries, Inc., 439 So.2d 33 (Ala.1983). Further, the Court stated that some of the factors to be considered by the trial court when making this determination are the “temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the venireman’s inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about.” Alabama Gas Corp., 439 So.2d at 35. We note also that the question of prejudice is primarily a matter within the trial court’s discretion, and absent a clear showing of an abuse of that discretion we will not reverse the trial court. Alabama Gas Corp., 439 So.2d 33.
Generally, neither testimony nor affidavits may be used to impeach a jury’s verdict, except “when an affidavit tends to show extraneous facts that have influenced the jury’s deliberations and the resulting verdict.” Alabama Power Co. v. Turner, 575 So.2d 551, 557 (Ala.), cert. denied, 500 U.S. 953, 111 S.Ct. 2260, 114 L.Ed.2d 713 (1991). Statements falling within the “extraneous facts” exception that influence the deliberations and the verdict are commonly made to the jury by someone not on the jury. Generally, facts concerning the debates and discussions of the case by the jury during deliberations do not fall within the extraneous facts exception. Alabama Power Co., 575 So.2d 551. See Reamer Bldg. & Dev. Corp. v. Hogan, 678 So.2d 144 (Ala.Civ.App.1996). This, however, is not always the case. See Clarke-Mobile Counties Gas District v. Reeves, 628 So.2d 368 (Ala.1993). In Clarke-Mobile Counties, our Supreme Court held that statements made by a juror during deliberations, regarding her son’s prior dealings with the defendant in a situation similar to that being considered by the jury, clearly fell within the extraneous facts exception.
In response to the Hudsons’ post-judgment motion, 3M Farms and Muller included L.B.’s affidavit, which stated, in pertinent part:
“During jury deliberations in Hudson v. Muller, several of the other jurors concluded that Elizabeth Moore was not an agent of 3M Farms at the time of the accident involved in the case, however, they wanted to ‘settle’ the case by awarding $25,000 just because the plaintiff was *150 poor and had medical bills that he could not pay. I argued ■with these jurors and told them that I did not believe we should award Mr. Hudson any damages because we had agreed that Mrs. Moore was not working for the farm at the time of the accident, so Martin Muller and 3M Farms were not responsible under the law.”
A reasonable view of L.B.’s response on voir dire and her affidavit does not indicate probable prejudice to the Hudsons; it appears that L.B. simply believed the evidence was insufficient to find 3M Farms and Muller liable for Hudson’s injuries.
The Hudsons also argue that they are entitled to a new trial because, they say, the trial court erred in refusing to allow the jury, during its deliberations, to view Exhibit 10, the caretaker job description. They further argue that because respondeat superior was the central issue in the case, it was imperative that the jury be allowed to view the job description in order to determine the full scope of Moore’s duties at the time of the accident.
Although the record reflects that the exhibit was marked as Exhibit 10, it was never admitted into evidence. Additionally, the record reflects that on at least two occasions prior to the jury’s deliberations, an issue was raised concerning whether the exhibit had been admitted into evidence. One occasion was when 3M Farms and Muller moved for a directed verdict following the Hudsons’ presentation of their evidence. At that time, the Hudsons’ attorney, in asking the trial court to deny the motion, stated that the caretaker job description had been admitted into evidence. In response, 3M Farms and Muller’s attorney stated:
“First of all, the job description still is not in evidence. He keeps referring to it as being in evidence. It’s not in evidence.”
The Hudsons’ attorney continued to discuss the evidence and Exhibit 10; however, nothing in the record indicates that he ever attempted to have the exhibit “admitted” into evidence.
Again, and immediately following the trial court’s instructions to the jury, the following dialogue ensued:
“THE COURT: So I think we can let them go ahead and take the exhibits, all except Number 10, and the verdict forms. You all might want to check and make sure. Make sure ■ you got all the right ones.
“MR. GALVIN: ... Thank you, Judge. We’re ready to send it back.”
Whether to allow evidence to go to the jury room, where it might be given undue emphasis and inordinate weight, is within the discretion of the trial court. Gold Kist, Inc. v. Tedder, 580 So.2d 1321 (Ala.1991). In Gold Kist, Inc., our Supreme Court affirmed the trial court’s grant of a motion for a new trial because the jury had been permitted to view an exhibit that had not been admitted into evidence, but that had been left in the room where the jury deliberated. Mindful of our standard, and the Hudsons’ failure to take corrective measures toward admitting the exhibit, we simply find no error in the trial court’s refusal to grant the Hudsons’ motion for a new trial regarding Exhibit 10.
Next, the Hudsons contend that the trial court erred in excluding the video deposition testimony of Dana Rister Gaché, who, they claim, was unavailable at the time of trial. Gaché was employed by the Hudsons’ attorney. Her testimony was that she heard Richard Moore, Moore’s husband, state that their vehicle, which struck Hudson, had been used on 3M Farms business. Richard Moore was residing in North Carolina at the time of trial; therefore, the Hudsons argue that he was also unavailable to testify. The Hudsons sought to have his testimony admitted under the declaration-against-interest exception to the hearsay rule because he was Moore’s husband and also was a co-caretaker at 3M Farms.
As authority for their argument, the Hud-sons cite McElroy’s Alabama Evidence, as follows:
“(1) General rule
“A statement of fact made by a person, who is since unavailable, which was against his proprietary or pecuniary interest is admissible in any civil action. Such a statement, because it is against the declar-ant’s interest, is considered to have suffi *151 cient reliability and trustworthiness to be admitted as an exception to the hearsay evidence rule. The basic distinctions between an admission and a declaration against interest are that, to qualify as a declaration against interest, the declarant must be unavailable and not a party to the present action.
“(2) What constitutes ‘unavailability’
“The traditional rule has been that, in order to be classified as unavailable for purposes of the exception admitting declarations against interest, the declarant must be dead. Whether such a statement is admissible where the declarant is unavailable for a cause other than his death does not seem to have been decided in Alabama.”
C. Gamble, McElroy’s Alabama Evidence, § 249.01(1) and (2) (4th ed,1991)(footnotes omitted). We note that the proceedings in this case arose prior to the effective date of the Alabama Rules of Evidence.
Our Supreme Court has held that whether sufficient proof is offered to establish the unavailability of a witness is within the sound discretion of the trial judge, and that rulings in matters resting within the discretion of the trial court will not be disturbed unless that court has clearly abused its discretion. Ex parte Wright, 625 So.2d 1135 (Ala.1993). Our Supreme Court further stated “that to be entitled to a reversal of a judgment for an abuse of discretion, the party claiming abuse must establish that it was prejudiced by the alleged abuse.” Ex parte Wright, 625 So.2d at 1137.
The Hudsons have not shown that they were prejudiced by the trial court’s failure to allow Gache’s deposition testimony. Additionally, the Hudsons had adequate opportunity to obtain Richard Moore’s deposition to establish the use of the vehicle on the farm. Furthermore, the trial court correctly excluded the testimony as hearsay.
The Hudsons’ final contention is that the trial court erred in refusing to allow Mrs. Hudson to testify that Moore admitted fault regarding the accident. They further argue that this statement was a declaration against interest, and, therefore, is admissible under an exception to the hearsay rule. They contend that Moore’s signing of Officer Billy Ray Moore’s incident report constituted a declaration against interest, or in the alternative, a spontaneous declaration.
As discussed, concerning declarations against interest and the unavailability of a witness, we agree with the trial court that these statements do not fall within the exceptions to hearsay. Ex parte Wright, 625 So.2d 1135. Additionally, any error in not admitting these statements into evidence would constitute harmless error. See Moseley v. Lewis & Brackin, 583 So.2d 1297 (Ala.1991). Moore had entered into a settlement with the Hudsons, and, therefore, the only issue before the jury was whether she was acting in the line and scope of her employment when the accident occurred. The Hudsons simply did not present evidence sufficient to persuade the jury that 3M Farms and Muller were liable under the doctrine of respondeat superior.
Our thorough review of the record discloses that the evidence supports the jury’s verdict, that it was neither wrong nor unjust, and that the trial court did not err in denying a new trial. Accordingly, the judgment of the trial court is due to be, and it is hereby, affirmed.
From a careful review of the record, it appears that the issue concerning the officer’s incident report was not properly preserved for appeal. Therefore, we need not address whether the incident report should have been admitted. Mead Coated Board, Inc. v. Dempsey, 644 So.2d 872 (Ala.1994).
AFFIRMED.
■ ROBERTSON, P.J., and YATES, MONROE, and CRAWLEY, JJ., concur.